Mr. Milwitt intended to defraud the Kaplans, Janice Daniels, Quan Anderson, David Valentine, Maria Mignogna, those were the tenants, and he filed bankruptcy petitions for them for the purpose of hiding and prolonging his phony attorney scheme. Those aren't my words. That's what the prosecutor said in opening statement that the evidence would show, an opening statement in which he described the landlords, in effect, as slumlords, not as victims. The government's own words, therefore, lead me to the first of the three points I'd like to make before the Court this morning, and that is that if the government proved anything, it was that Mr. Milwitt intended to defraud tenants, not the landlords, in a case in which intent to defraud the landlords was the essential element, the key disputed element of the crime charged, and the crime on which the jury was instructed. His conviction should, therefore, be reversed outright. Second, if I fail to persuade you of the first point, and not to minimize my conviction of the first point, the jury's verdict that there was sufficient evidence of intent to defraud the landlords was fatally infected by prejudicial evidence about the tenants, evidence that filled the trial, filled the arguments, filled the testimony, including babies and pregnant women being put out on the street, mentioned repeatedly in testimony and in argument. And the trial was further infected by an erroneous jury instruction that neutered the requirement of proof to intent to defraud the landlords, which was the key factual dispute in the case. And those errors require, at a minimum, a new trial. And the third point that I want to press this morning is that two years of completely unjustified delay in indicting the case after the investigation was completed unfairly prejudiced Mr. Milwitt, turning his case from one in which he would have been required to be sentenced to concurrent time with his state sentence for unauthorized practice of law, turning it into a concurrent time case into one in which he was done serving his state sentence before he was even indicted in federal court. And therefore, as we speak, as we are here today, he is serving an additional 17 months in federal prison that he wouldn't have served had the government indicted this case in any sort of a timely fashion. What does the panel do with the Crawford case? The – I'm sorry. Versus Crawford? And which – Which says that you don't have to have an intent to defraud a specific victim? I remember the government citing a Von Stoll case to that effect. But – and so I don't – I regret to report, I don't – Is this new to – I didn't mean to surprise you. Is this new to you? The Crawford case? 239, Feb. 3, 1086. I don't remember reading it, but I think I can – Assume that there is out there a three-judge panel decision that says that under wire fraud, mail fraud, you need not have an intent to defraud a specific victim. How would the panel deal with that in the context of your argument? In – in several ways. And if I'm wrong about what it says or the case, I'm sure you can – Well, I certainly accept the Court's reading of the case. And let me give you a couple of responses. First, apart from what may be true in terms of the government is allowed to change the identification of a victim or not identify a specific victim on the facts of any given indictment and case, there is an immutable principle of law, the Chiarella case, which we cite in our brief and several other cases, which says that the appellate court can only affirm a conviction based on a theory on which the jury was instructed for purposes of conviction. I take it you're – if I'm right about Crawford, that part of your argument would be it would be a different case if the government had argued that Millwood intended to defraud the clients, the tenants, the landlords, and the bankruptcy court. And it – and you can find any one or all of the above, but that's not what was argued and presented to the jury. Essentially. The government did ultimately argue. They argued in opening this was a case to defraud the tenants. They argued in closing after the judge told them what the jury instruction was going to be, that it was a case to defraud both the landlords and the tenants. They never argued it was an intent to defraud the bankruptcy court. But the key is not, I think, what the government argued, but what the court instructed the jury. And that's the only basis on which this court could affirm the conviction. And what the court instructed the jury was that they had to find an intent to defraud the landlords. I think Judge Walters – I'm sorry. I just don't quite understand. The district judge was very clear on who the victims were under the Banksy law and pulled the government in to their burden and instructed pursuant to that. Correct. So there was no doubt in the bankruptcy – in the district judge's mind that the victims had to be the landlords. And wasn't that the instructions that were given? That was the instruction. But I was responding to the question that said, would it be okay if, in fact, the tenants were the victims and not the landlords? And the first answer to that question is, it's not okay because the only way this conviction can be affirmed is based on the way the jury was instructed. And the way the jury was instructed was that this was a fraud on the landlords. Right. And so my first argument is, there was no proof that there was an intent to defraud the landlords. And then my colleague cited Crawford to you that, no, the intent is not necessary. So how do you handle that? Well, I think I handle it first by the jury instruction tells us the only basis on which we can affirm a conviction. And if the jury instruction says that the victims are the landlords, then the government has to have proven beyond a reasonable doubt that the victims were the landlords, and they didn't do that. That's – that's my first argument. The second argument is – You've just lost me on the first argument. Where – it's clear from the record that they weren't able to proceed with their judgments of foreclosure. Well, it is not clear from the record that they weren't able to proceed with their judgments of foreclosure. The government offered proof that there were judgments, but there was no evidence about what actually happened, whether any landlord actually tried to foreclose or anything. There was no – there was no proof of that. And in fact, with some of the tenants, like Mr. Ballantyne, his house had burned down a week prior to any order issued in Landlord-Tenant Court. So the notion that Mr. Milwitt had in any way prevented Mr. Ballantyne's landlord from – from evicting Mr. Ballantyne, or that Mr. Milwitt could possibly have intended that he was going to do that when he knew, according to the evidence, that Mr. Ballantyne's house had already burned down, that's one of the key things that shows that Mr. Milwitt's intent was, as the government proclaimed in opening statement, to defraud the tenants and not the landlords. But that wasn't what the instruction on that is what the jury got. But what you're saying, if I understand it, there's a – there's a problem with the evidence they didn't call landlords in to say, I would have foreclosed but for the bankruptcy. Well, that's one of many problems. In what case do you – do you rely upon to say that that's a requirement in order for there to be a conviction? You know, I – I don't know that I have a case that says that any particular piece of evidence is required in order to have sufficient evidence. What I have is – what I have is a complete lack of evidence that says anything about Mr. Milwitt's intent as it relates to the landlords as opposed to the tenants. Is it – is it correct, as a matter of law, that the filing of these bankruptcy petitions absent relief from stay obtained by the landlords prevented any foreclosure? As a matter of law, it's not fact. I – I believe that's – that is correct. It's – that is – How about it's in place the moment the petitions were filed? That is the effect. And that was the extent, I believe, of the government's evidence. They had an expert witness who described landlord-tenant procedure and said that if you have a bankruptcy filing until it's undone, that would stay an eviction. But all that shows is that there was a potential effect. Wasn't there one piece of evidence indicating that a notice had been given to one of the creditors? There – there – there were notifications given to creditors as part of the bankruptcy process. They were correctly addressed. And to us, that is a further indication that Mr. Millward was not trying to interfere in any way with the landlords. Remember, he thought the landlords were entitled to nothing because they were slumlords providing uninhabitable – uninhabitable premises and weren't entitled to get rent or – or possession or anything. That – that's his mindset. And he's not trying to deceive the landlords. He's – he's correctly putting the tenants' information – address information so that the landlords – and correctly sending these things to the landlords so they get it. He's not trying to deceive them. There isn't evidence that he's trying to deceive the landlords. There is evidence he's trying to hide what he's doing from the tenants because that's his fraud. His fraud is on the tenants pretending to be a lawyer when, in fact, he isn't. So the only evidence they have, as – as the Court notes, is as a matter of law and as described by their expert, you – you have this potential effect if you file the bankruptcy petition. But the mere fact that you have a potential effect on someone else when you're defrauding the tenants is, under uniform case law, not enough to prove the highest mental state that the law requires a specific intent to defraud. These are Chapter 13 filings. I believe that's correct. I – I – I – I disclaim bankruptcy expertise. So, you know, the essence of the position there is they don't have any of the typical evidence that you would see. He doesn't get money from tenants. There isn't any landlord testimony. There's no evidence of any actual impact on the landlord. There's just this evidence that there could potentially be a downstream effect. There wasn't actually evidence that there was a downstream effect. There's evidence there could have been. That's just an attempt to bring back the long-rejected doctrine that, you know, if you intend the natural and probable consequences of your acts, which isn't sufficient in a specific intent case. But I sense some skepticism on that point. Let me move to the second point. No, no, I appreciate that. I appreciate that. And I hope – I hope I'm mis – misperceiving the skepticism. But to me, the point that is even more powerful is that I hope I've at least persuaded you – if I haven't persuaded you that there wasn't sufficient evidence – I've at least persuaded you that there wasn't a lot of evidence, it wasn't a very good case as it relates to the landlords as opposed to the tenants, which was the whole focus of the – the proof until the judge told the government what jury instruction he was going to give. Assume that your client really was a lawyer. We know he wasn't. Does that change the case? Same exact facts except your client is a member of the State Bar of California and authorized to practice in the courts, the federal and state courts in California and files the same exact thing. The government might have charged it a little differently. I think, though, that the – Part of the matter is the same, isn't it? They might have made exactly the same claim because they would still contend that he hadn't been authorized by the tenants to file the bankruptcy petition, so I think they would still be contending that he was defrauding the tenants. I think we'd probably be in the same place. I would like to ask a question that goes to this, if you wouldn't mind. There was a pretrial motion in Lemony to restrict evidence about the tenants. Correct. The judge listened to that and then made a decision that it's inextricably connected and it's part of the background and it'll come in. I don't find after that any objection, specific objection, to any of the evidence when it actually came in. And I went back to the – what we have next of record where each one of these people testified and to the extent they did, and it was somewhat limited, I didn't find a specific objection. Am I – is there a specific objection that came up at the time the evidence came in? My reading of the record is the same as Your Honors. I don't think there were specific objections. I think the parties were relying on the previous objection and the judge's ruling on it. So if the parties – if the defendant believed that it was not part of the history, inextricably connected, an objection could be made. As it wasn't made, isn't that issue waived except to the extent that it's part of the history? I don't think so. I think the defendant made exactly the same arguments that I'm making now in his motion. The judge denied that. I don't think the court wants to impose an obligation that after the court has already ruled on a motion that the defendant has to keep making the same objection all the way through the trial. If I was a trial judge, if you wanted to get around that, you just said, may I have a continuing objection, and ordinarily it was granted. That wasn't done. I don't believe that was done either, Your Honor. But the ultimate reason why I don't think the inextricably intertwined argument gets anywhere for the government is that while there are certain aspects of the tenant fraud that I can understand being inextricably intertwined with the landlord fraud, the fact of babies being thrown out on the street, pregnant women being thrown out on the street, children crying as they fear being thrown out on the street, that isn't inextricably intertwined with anything. That's just pure prejudice. And that was a large segment of the evidence at this trial and a large segment of the closing argument at the trial. I've gone through the amount of evidence it is, and I don't find it a large segment. I can cite you the ER records. But at any rate, when did this come up? On what issue did it come up? I'm not sure I understand your question. I'm sorry. There are several records to the vulnerability of the tenants and how Millward preyed upon them. And while they're related to the loss suffered, it wasn't objected to. The district judge was allowing it in. But what was the specific issue? Why did it come up? I think it came up because the government thought it was proving a fraud on the tenants. And as part of the fraud on the tenants, they were milking the fraud on the tenants and gathering sympathy about the victims. That's what they were doing. And that's why it has absolutely nothing to do and is purely prejudicial on the fraud on the landlords. I thought it came up as to whether or not they were, in fact, bankrupt. That seemed to me to be the thrust of it. Well, babies being thrown out on the street isn't really very probative evidence of whether someone is bankrupt. Whether someone is bankrupt is, can they pay their bills? And that question, I think, may have been asked of one of these people, if I remember. But babies being bankrupt really doesn't relate to that. You're down to a little under three minutes. Did you want to save some time for rebuttal? I do. I do want to emphasize, while I'm on the subject of the prejudicial evidence, that the jury instruction, which completely neutered the requirement of intent to defraud. If you combine that with the prejudicial evidence, you end up with what I regard and what I hope the Court sees as a completely unfair determination of whether there was, in fact, a fraud on the landlords as opposed to a fraud on the tenants. And if I may, then, I'll save the remainder of my time. Thank you. Thank you for your argument. We'll hear from the United States at this time. Good morning, Your Honors. My name is Shawna Yen. I represent the United States. I'd just like to address the defendant's arguments in turn, starting with the sufficiency argument. Your Honors, this is a review of a jury verdict of five convictions in which, as you Your Honors know, there's a highly deferential standard. The evidence is viewed in the light most favorable to the government. Furthermore, in a situation like this, where the defendant's only claim of insufficiency is that the intent to defraud did not include enough evidence of intent to defraud the creditors. Isn't our — let's get the standard right. Isn't our standard that whether any reasonable jury could accept — could find that the defendant was guilty? It's more than just — it's more than just we take it in the light most favorable to the government. Absolutely. It's a high standard on insufficiency. Absolutely, Your Honor. That — you're absolutely right. Whether any rational trier of fact could have found that this evidence supported guilt beyond a reasonable down. I don't quite understand your theory of fraud against the creditors. It's a — now, we start off with bankruptcy fraud as a specific intent crime, right? Your Honor, I'm not — I don't agree with the defendant that it's a specific intent crime. Right. There is a requirement of intent to defraud. Right. Well, let's leave that aside, then, for the moment, if we don't have agreement. What's your theory on intent to defraud the creditors? Well, Your Honor, as a broad theory — let me just summarize in brief what the evidence was, and I can encapsulate with the theory. The evidence is — and I understand bankruptcy law. So tell me, when somebody pursues a legitimate filing — Yes. I mean, let's presume for the moment this filing was legitimate, that it was done with the tenant's consent. Assume that. Okay. Where's the fraud? The fraud, Your Honor, is the deprivation of the creditors from exercising immediately a legal right that they were granted by the courts based on the judgment and conviction of their favors. Assuming that the tenants had the — the tenants gave consent, there's no fraud, is there? There is fraud, Your Honor. I'm sorry. I don't — I just have to disagree with you because anybody can file a bankruptcy with the intent of stopping a creditor from exercising their legal rights. That's what you do in bankruptcy. The tenants would not have committed fraud had they given consent and actually wanted to file a bankruptcy. You have to agree with that. Your Honor, I think you have to look at the intent of the fraud, the creditors. No, I'm — let's take this one step at a time because I want to attend your theory. Sure. This is where I'm having trouble, so I'm not arguing with you, but I hope you can address some of my concerns on this. So if you start with the premise, and I — maybe you disagree with this. I mean, if this had — if this had been a lawyer involved here and the lawyer had been pursuing a bankruptcy on behalf of these tenants, there would be no cause at all for fraud. Don't you agree? Your Honor, if those were the facts of the case — Yes, this is hypothetical. — an actual lawyer and his tenants authorized him to file bankruptcy petitions for the specific purpose of stopping his creditors from coming after him, yes, that would be fine. That's not the facts of this case. I understand that. That's why I call it a hypothetical question. So we take a legitimate — bankruptcy is a legitimate means of resolving creditor-debtor disputes. And this was a Chapter 13 filing, as I understand it, meaning that the debtors were probably promising to pay back every dime to the landlords, right? That's what you do in a Chapter 13. You can modify the rights, but generally if you're talking about landlord-tenants, you've got to do that. So I'm having some trouble with your argument that stopping a creditor from exercising rights is fraud, because that's what you're saying. Your Honor, the fraud — I understand completely the fraud against the tenants. It's reprehensible. It's — I have no difficulty with that part of the theory. I don't understand particularly the fraud against the creditors, because, in fact, the tenants wanted him to stop the evictions. He filed a fraudulent document to do that. But on the other hand, you've got a legitimate process in mind. And what you seem to be arguing is the existence of the automatic stay alone is evidence of fraud. And I'm not sure bankruptcy theory supports your argument. Your Honor, intent to defraud requires that you're trying to deceive the — there's a deception involved of the victim. In this case, the landlords, the creditors, were deceived because they were subject to an automatic stay that they believed was a legitimate automatic stay. What's the evidence of that? The evidence is — What is the evidence that the creditors believed anything? You have an expert witness that says this is the effect of the automatic stay. Right. But as I understand the state of the record, and I've looked pretty carefully at it, there's no evidence that any creditor said, gee, I wanted to foreclose and I couldn't, I was apprised of this and I wanted to foreclose and I couldn't, or relied on any deception. So explain to me your theory. Your Honor, trying to address your question and getting back to my theory. And I don't mean to argue with you, but these are — This part. I'm expressing concern, so you can — Getting back to the facts of this particular case, Your Honor, I don't think that you can look at what happened to the landlords in isolation of what happened to the tenants. I'm not. The indictment alleged fraud really on both parties. We agree with the district court judge. If he instructed the jury that they were to find fraud only as to the creditors in order to sustain the convictions, we agree with that. And we're — and we assume that that's true. Your Honor, are you admitting that if you take out the testimony concerning the tenants, that you don't have enough to prove fraud against — Not at all. So let's excise that. And I understand the evidence has to be — Your Honor, I don't think you can necessarily excise it without — without distorting what happened at trial and what this case was all about. This is a scheme that involved the landlords and the tenants in terms of his ability to successfully get what he wanted, which was attorney's fees from people who thought he was acting as his lawyer. I understand that. In other words, his fraud on the tenants was a critical aspect, a means to his defrauding of the tenants. He had to file these false bankruptcy petitions to stop the landlords from repossessing the property so that he could convince the tenants that he was acting on their behalf in landlord-tenant law, and they would continue paying him attorney's fees. In other words, the — the state of mind here, Your Honor, which is relevant, is not the state of mind of the victims, but the state of mind of the defendant. What did he intend? Where's the proof that any creditor knew about this? But, Your Honor, that's irrelevant. The — whether a creditor knew about this or not — and first of all, there is proof that they did know about it. As Judge Wallace pointed out, for instance, the defendant personally — he served Lorinda Atwood, one of the creditors, with a notice of the bankruptcy stay. But — Yeah, I think I mentioned that. I think that was one evidence there. But what I mean is what — you know, the way the bankruptcy works, and especially Chapter 13, the debtors come forth with a plan of repayment. And I look at that. Normally, you'd see, if you were claiming the creditors were true victims, that they would be in there saying, yeah, we wanted to foreclose. I can't believe it. We were stopped. We exercised our rights. We paid money. We did this. We did that. But there's nothing except your evidence as to the automatic stay. Your Honor, as you know, an attempted fraud can be shown by circumstantial evidence. And the circumstantial evidence here showed that each of these creditors was awarded repossession of their property and or repayment of back rents. The evidence showed that, you know, as our bankruptcy expert testified, the filing of these bankruptcy petitions, which the defendant did on behalf of each of the respective tenants, in or about the time that the judgments were entered for the landlords, that the automatic stay automatically, as a matter of law, took place. As it does in every case. As it does in every case. That's true. If these people had hired lawyers to pursue their claim and said, I'm going to give you consent to do whatever you use whatever means you can to stop this, legal means, bankruptcy is a tool of that. You seem to be arguing that, really, if you're trying to stop credit from foreclosing, that's somehow fraudulent, and that's, of course, not bankruptcy law. That's fraudulent, Your Honor, if the basis for the bankruptcy petition was fraudulent in the first place. I mean, these are bankruptcy petitions. I agree with you there, but you didn't charge fraud in the bankruptcy court. You didn't charge fraud on the tenants. You charged fraud as to the creditors. And that's, again, I'm, this is where I have some problems with your case. Well, in other words, from a creditor's point of view, if you had known that there was a legitimate bankruptcy fraud, I mean, a bankruptcy petition filed, obviously, that's a legitimate process. But from a creditor's point of view, if he had known that the bankruptcy petitions have been filed under fraud, that names were forged on the bankruptcy petitions, were filed without the authorization of the very people whose names appear on those bankruptcy petitions, the very people who are promising to repay the money under Chapter 13, I think this is analogous to the bank fraud cases where a deception in terms of representation of a fact on a loan document is enough to show the intent to defraud, that there doesn't have to be a showing of actual loss to the ultimate victim. I don't know if that answers your question. There's no showing of loss here at all. But there doesn't have to be, Your Honor, under the case law. I know. I'm just saying there's no showing of loss, no showing of anybody who was defrauded, who said I was defrauded, I was misled, I was deceived. I don't. I understand. We're just talking about the state of the evidence. The chips will fall where they may. But you have to agree with me. There's no, in this unusual case, none of the purported victims actually claim to be defrauded, right? We did put that evidence on, Your Honor, but we didn't need the evidence either. Because the circumstances show that he put the mechanisms into place that regardless of the language. I've taken up too much of the question. They would have been state. The same question I asked counsel. Are you familiar with the Crawford case? Your Honor, I haven't read in some time. I understand what your, I will take Your Honor's representation of the case as law because it's consistent with the other cases that were cited in our brief, which is that I believe, Your Honor, I said that there was no need to show an actual intent to fraud a particular victim for purposes of mail fraud or wire fraud. That is consistent with the cases that I found, Your Honor, the Von Stahl case in 1984, Ninth Circuit case, where the identity, if the indictment charged fraud against one victim, but in fact, the proof came in and it showed that the fraud was against another victim, that the Court said that that is not the kind of substantial rights of the parties were not affected by that, such that that would be kind of a variance that would constitute reversible error. Well, I'm not too surprised you're not familiar with it because neither party raised this issue in their briefs. That is the issue of whether intent to defraud a specific victim is necessary. I don't find that in the appellant's brief and I don't find it in the respondent's brief. In your brief, you argue that it was sufficiently intended to defraud the creditors, not listing them specifically. So I'm not surprised as much as neither party has raised the issue, and we usually consider it waived, that it's not before us. But assume for the sake of argument that my colleague is correct on the Crawford case. As a matter of fact, the dissent specifically identifies why the dissent is opposed, that there is not an identifiable victim. Where does that leave you then, if you don't need to identify a specific victim, what do you have to do in your indictment, and what evidence do you have to prove as you see it? Your Honor, first, just to address your point, we did raise that issue in our brief. You did? Yes, we did. And we cited to Vaughn's --. Specific victim? Yes. We had said that it was with respect to our argument as to sufficiency when we cited Vaughn Stahl, Your Honor, and I can find the page for you. What page are you? If you look at 1617th of the appellant's brief, Your Honor, if you look at footnote 5, we argue that even if he were able to show that variance had occurred, he couldn't  have shown that variance had occurred, we cite Vaughn Stahl, and note that in Vaughn Stahl --. Oh, I'm sorry. I don't read footnotes. I figure if they're not worth being in the text, they're not worth my time. But I was looking at the issues that are listed by you and by counsel. I didn't find it in the statement of issues. Yes, Your Honor. It may have been hidden away in a footnote, but I missed that, and I apologize. Your Honor, but to get back to the good things from the past, as we've represented to you how awkward it is, how would you argue what is necessary? Your Honor, that's an excellent question. And when you look at the elements of 157, the bankruptcy fraud that we charged, you'll see that the identity of the victim is not within any of the elements. The elements are there has to be a scheme to defraud, there has to be a filing of a bankruptcy petition, and there has to be the use of the filing of the bankruptcy petition to further the scheme to defraud. But in this case, you specifically pled in your indictment that the creditors are the ones to defraud it, right? Yes. Okay. It's your argument today, really, that the tenants were the true intended victims of the fraud, and the creditors were a means to the end of defrauding the tenants? Your Honor, my theory is that both the creditors and the tenants were intended victims of the fraud. Now, the landlords had to have been intended victim of the fraud for the fraud to have succeeded. He had to have convinced the landlords that a legitimate bankruptcy petition had been filed so that they would be safe. Where is that in the evidence? I mean, these folks didn't even know that a bankruptcy petition had been filed. Well, at least one of them did. I'm not talking about the landlords. I'm talking about the tenants. The tenants had no idea that bankruptcy petitions had been filed, right? Many of them did not know until later. But the point is that the landlords were led to believe that a legitimate bankruptcy petition had been filed. And recall that he filed these bankruptcy petitions not only without checking with the tenants as to where they wanted them filed, but he also didn't check to see whether they're qualified for bankruptcy at all. He just simply filed the petitions. And as Your Honor knows, until the recent law changes, you could easily file a bankruptcy petition based on virtually very little, causing an automatic stay to happen, and causing the landlords to not be able to exercise their right to get back in their money back and invest that money. They couldn't do any of that as long as the automatic stay was in place based on the fraudulent filing of a bankruptcy petition that shouldn't have been filed in the first place. But you've just described there was no proof. I'm sorry, Your Honor? There was no proof that any landlord was delayed, impaired, harmed. There was no direct proof, Your Honor, in terms of a landlord getting up on the stand and saying that I tried to get my property back and I couldn't. The government's proof consisted solely and exclusively of a legal expert who said, here is the legal impact of the filing of this petition, correct? That's correct, Your Honor. And from that, the government asked us to infer what the defendant's intent was. Your Honor, that was in addition to the testimony of our legal expert, Afremsky. We also showed – we put in evidence of the judgments and convictions that each of these landlords or creditors obtained. We put in the bankruptcy petitions that Millwood fraudulently filed on behalf of the respective tenant of that landlord. We put in the fact that in that bankruptcy petition, he had attached an exhibit in which he listed the creditors that would be affected by the automatic stay, and that in every single instance, he listed the name of that very landlord that was the landlord of this particular tenant. Assume exactly these facts, but Millwood is a licensed lawyer. Do you still have a case? I believe so, Your Honor. Assume not only that he's an authorized member of the State Bar and authorized to – that he had the specific approval of his clients to file the petitions. Do you still have a case? I – that, I think, would be more problematic, Your Honor. He would have to have – to have to – for us to not have a case. I think he would have to – the hypothetical would have to be close to what Judge Thomas had said, that he would be – have to be a legitimate attorney. He would have had to have the authorization of the tenants. And he would have had done all the research to find out not only to – that his tenants – the tenants actually qualified for bankruptcy. Wait a minute. You've added an element that's going to sweep in a lot of lawyers. So it's a – it can be a crime if a lawyer doesn't do all the research they need to do before filing a pleading? If that's bankruptcy fraud, I don't think you're going to shut down a bankruptcy system. No, no. You're going to be very busy. I don't mean for Your Honor to misunderstand. I thought that your original hypothetical was that all the facts are the same in this case. Except Millwood's a lawyer. Except that he's a lawyer. Yes, that's it. And his clients say it's okay to file. So is that a crime? I think there's no crime there if his client said it's okay to file and his client, in fact, did qualify for bankruptcy. No, no. See, this is where you're losing me. This is where you're losing me. How can that possibly be bankruptcy fraud on the part of the lawyer in this instance? I'm sorry? I'm not going to quibble with you about it, but I'm just saying. My point that I'm bouncing around on a bit, you tell us that if Millwood was a lawyer and otherwise the facts are exactly the same, you still have a crime, right? Yes. The thing that tips it off of the teeter-totter is that he didn't have the approval of the tenants to file. He didn't have the approval of the tenants to file, Your Honor. So the key thing in the government's mind that makes this a crime is what he, his deception of his, quote, clients, his deception of the tenants. That's the key element. Well, that is the major part of this case, Your Honor, which is his deception of the tenants. That was the purpose of his whole scheme, was to deceive his clients and to deceive the tenants. Having said that, in order to deceive the tenants, he had to have deceived the landlords. That was also a key element of his crime. There was no other way he could have convinced these tenants that he was doing legal work on their behalf in a successful way. Why do you say, why does success have anything to do with getting money from these folks? Because when part of- He said, you're retaining me to stop this foreclosure. He takes their money. Yes. And that happens all the time when people with either ineffective assistance of counsel, if you're talking criminal case or malpractice. If it's a civil case, people take money and they don't file any papers. That's just ordinary malpractice stuff. So why did he need the creditors to successfully convince them? It seems to me that many of these, at least the evidence seemed to fall for me, you can correct me, that he'd taken their money. They were already defrauded. The fact that he filed something on their behalf was more than some lawyers would have done who were just defrauding their clients. I think that was a means for extending the fraud, Your Honor. He did take some money from them in the beginning, but the fact that they were not evicted from their premises when they thought they would be evicted, that nobody was coming and putting eviction notices on their doors as they expected, or nobody came asking to collect the $1,500 in back rent, caused them to believe that he was legitimately filing papers in landlord-tenant law, as he said that he was doing. He was legitimately their attorney and helped them perpetrate the fraud. I think the missing element of proof here is that the creditors believed and, in fact, stopped their eviction procedures because of the bankruptcy. Now, obviously, automatic stay applied, but in this circumstance, or many circumstances in which the landlords choose not to pursue their remedies very fast. But as Your Honor knows, there is no requirement that the landlords have chosen to pursue their actual remedy. There's no requirement of a proof of actual loss or intent to cause actual loss. Yes, I understand. Now, may I ask you one more question over time, and I'm taking over time? Why do you say that these bankruptcy or fraudulent bankruptcy petitioners didn't qualify for filing? I'm sorry, Your Honor? Why did the tenants not qualify to seek an automatic stay? Well, I think that the evidence that supports that assertion. Well, some of the tenants, I believe, testified on direct examination. I could try and find the record site for you, Your Honor. I know we're out of time, but I can send it to you in a letter brief, testified that they wouldn't have sought bankruptcy protection because there was no reason to. Right. Now, some of them had money. Yes. But a Chapter 13 bankruptcy, you can file a Chapter 13 bankruptcy even though you don't have money. You can say, I need protection from eviction. I need this, and I'm going to use the bankruptcy because you're promising to pay the money back. In fact, there's no evidence here. It was implied that these people didn't qualify. And you keep saying they didn't qualify, but, in fact, they did qualify under bankruptcy law, didn't they? Your Honor, even assuming that they did qualify for bankruptcy protection, that doesn't take away from the fact that they never authorized Mr. Milwitt to file these bankruptcy petitions on their behalf. Granted, but you keep saying they weren't qualified to file, and I just thought I would pursue that because I don't see any evidence on the record that they weren't legally entitled to file bankruptcy. I think we have whipped this horse to death. Okay. Your Honor, there were a number of other issues that the Appellant had raised. I know I'm out of time. I don't know if you want me to address any of them before I sit down. This is on a different issue. Yes. And I didn't want to interfere with my colleagues. I'm concerned about the sentence imposed in this case. Yes, Your Honor. The judge decided there were vulnerable victims. Now, the only vulnerable victims I read the record that he identified were not the landlords. They were the tenants. Yes. And he's been clear from the beginning that the victims have to be the landlords. How can you justify a vulnerable victim sentence when he's already identified the only victims in the case have to be the landlords? Your Honor, that's an excellent question. So a question that the defendant actually didn't raise himself, but I'm glad that you raised it. It's because I think it's a separate inquiry as to what's charged in the indictment. In a sense, he said double counting, which may be different. Well, I think it's a different inquiry as to what the indictment charges, what kind of notice the defendant has as to what the proof is going to be at trial, which was all – which is what the judge's jury instruction is directed to. What the elements of the crime are, what the indictment charge, and the notice of the defendant. It's a different inquiry when we look at the sentencing guidelines, Your Honor. As Your Honor knows, the sentencing guidelines often deal with dismissed charges, uncharged conduct. It's – the sentencing guidelines are much broader than the elements of the crime or what's even alleged in the indictment. So it was not – oftentimes the sentencing guidelines take into account just relevant conduct. In this case, the district court couldn't ignore the fact that even though, in his view, the indictment narrowly confined itself to charging fraud on the creditors, that he had also heard evidence of a great deal of fraud on another set of victims on whether they were actually charged in the indictment or not. And we allege that they were, but he didn't believe so. Even whether they were charged in the indictment or not does not take away his ability to take that into account for sentencing purposes. It seems to me rather odd that after being so careful to identify the victims in convicting the defendant, that in deciding how much prison time he's going to have, we slip over to somebody who's not, by law and his ruling, not a victim. Is that a reasonable … ? Well, that might be good if this case were defrauding the tenants, but the case isn't about defrauding tenants, it's about defrauding landlords. I don't see how – if the government wants to indict on some fraud against the tenants, I can see why that vulnerable victim exception would be. But I find difficulty in this case. I understand that you have wider latitude instructions, but there has to be some context, something attaching it to the conviction. What is the – I didn't understand the district judge. He was so clear on this before, and I don't understand he didn't say in his sentencing why that was connected. Your Honor, this is the same judge that denied the defendant's motion to exclude the tenant's testimony. That's right. This is the judge who recognized that even though the indictment was very clear about defrauding the creditors, that this is a case that also necessarily included evidence about the tenants, because they were part of the full story of the scheme. Yeah. And it had to be taken into account. When we look at the full picture, the reasonableness of a sentence for this particular defendant, you have to look at the totality of what he did and the people who were affected by what he did, whether or not they were specifically identified as victims, per se, in the indictment. Well, you may be right. The defendant didn't bring it up, so maybe I'm barking up a tree that doesn't exist. But thank you for your comment. Thank you, Your Honor. Thank you. Rebuttal? I could proceed quickly through a couple of the points that were raised. First of all, at page 24, footnote 9 of our opening brief, we tried to recount the evidence on who had what assets for purpose of bankruptcy. There was very little evidence about that, but we put it in at page 24 of our opening brief. It's not clear to me how it's a fraud on the landlord if they were eligible for bankruptcy, but they weren't authorized. They didn't authorize Millwood to file. That seems a fraud on the tenant as opposed to a fraud on the landlord. I have been able to locate Crawford, and it is, as I suspected, and I apologize for not having it at my fingertips before. It's essentially the same sort of case as Von Stoll, and it's very different from this case. In Crawford, my understanding is the defendant was charged with taking a painting, and the holding was she didn't need to know that the university owned it. She just said, I took it from the museum, and I didn't know the university owned it. So the difference between who owned it was not a difference in terms of the government's theory of proof of what the crime actually was, as it is here between a fraud on the tenants on the one hand and a fraud on the landlords. There was just a question, did she know that the university owned the museum? And in addition to that, and going back to the distinction I made earlier, the jury was not incorrectly instructed. The jury was not given an instruction that says you have to find a fraud on the landlords. They were given an instruction, and I think it's contained in the dissent in Crawford, that talks about, you know, that just refers back to the indictment. The indictment said the painting was then owned by UCLA. So the instruction did not pin the case down to a particular theory that's different from what the government would try to, would be trying to argue on appeal. So it's different from this case. I'm sure you could, I won't take away too much of your time, but I'd like to have you comment on this in your effort to distinguish Crawford, because obviously Crawford is very important to the outcome of the case. Judge Tashima, in his dissent, in indicating what he says the case was about, he said, up till now, it has been the law that this crime requires an identifiable victim. That is, someone must have been defrauded of his or her property. Now he's saying that's a change which is consistent with what we have been indicating Crawford states. How, in light of Judge Tashima's specific identification of what it is, would you argue that it doesn't apply here? Well, I would always hesitate to reason about what a holding is from what the dissent says. But assuming, taking that as a given, that we are reasoning about the holding from what the dissent is, I would say that the fact that the indictment does not have to specify a particular identifiable victim, does not, especially in the context where it's just a question of who owns the museum, does UCLA own the museum or not, that is a completely different case and is far short of the shift that you have in this case between you intended to defraud the tenants all the way over to you intended to defraud the landlords who the tenants were fighting. That's a completely different shift in the theory. It's not just a question of, okay, did we know that the landlords owned the museum? That is an issue I'm going to. The issue we're dealing with is, is it sufficient for them to say you defrauded the creditors, or do you have to say the creditors A, creditor B, and creditor C? Well, and that goes to our issue about the jury verdict form, which actually lists not any of the creditors, but the, I'm sorry, not any of the creditors, but the tenants. Yeah, but that wasn't objected to. Right, but there was a submission of other instructions on that, and the case law says that ought to be good enough. If I could just get to one or two other points very briefly that were made, I hear the government again arguing that the idea of the bankruptcy fraud was to hide from the tenants what Mr. Millwood was doing, and that there was potentially an effect downstream on the landlords. And that's precisely what our brief explains is insufficient to constitute an intent to defraud the landlords. And I think we're very clear on both sides of that issue. What else do you have? I also heard the government say that it is a requirement, I'm sorry, that it's not a requirement of intent that there be an intent to create loss to the victim. And that is what the judge instructed the jury, but that's not a correct statement of the law. And I think that's one of the pivotal reasons why the trial was unfair, because in light of all this prejudicial evidence and the thin, if any, evidence that they had of an intent to defraud landlords, they completely neutered the instruction on the key element of the case by saying there was not a requirement that Mr. Millwood intend to cause loss to the victims. And what's an intent to defraud if you're not intending to cause loss to a victim? And the Hornbooks say you do have to have that intent. The instruction in this case erroneously said that you didn't. There, I listened for any justification of the pre-indictment delay. There is no justification for that. And it's. She did not mention it in her argument, so that's not. Okay, fair enough. Ultimately, I think the this case was charged incorrectly. And just as Judge Easterbrook said in the Norby Walters case, which we cited in our brief where the case was charged incorrectly, the defendant was a scoundrel. But the government didn't prove what it charged, and the conviction had to be reversed. And I submit the same result is required here. And I ask you if you do have any sympathy for my position. Mr. Millwood, the clock is ticking for Mr. Millwood. He's serving the overtime time. He's serving as a result of the government's pre-indictment delay. There's no real remedy for him unless the court, if it has sympathy for my position, rules quickly so that he can stop serving the additional time. We understand. Thank you very much. Both sides for their argument. The case just argued will be submitted for a decision. Ms. Ascoli, back from the other courtroom. Apparently not.
judges: Wallace, Hawkins, Thomas